UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KATHRYN ANDRESEN,

    Plaintiff,

v.

TEREX ADVANCE MIXER, INC, et al.,

    Defendants.

Case No. 3:21-CV-676 JD

## OPINION AND ORDER

Now before the Court is a motion to dismiss filed by Defendant Ozinga Bros., Inc. ("Ozinga"). (DE 5.) Ozinga argues, in part, that the Plaintiff's sole claim against it seeking declaratory relief is not ripe. The Court agrees, finding that any adverse legal interests are not of sufficient immediacy to make the claim ripe. Accordingly, the Court lacks subject matter jurisdiction over that claim and it must be dismissed.

**A.    Factual Background**

Ozinga is in the business of selling and delivering cement. (DE 36 ¶ 6.) In the process of delivering cement, Ozinga uses cement-mixing trucks. (*Id.*) One of the mixing trucks used by Ozinga in its business was a 2015 FD5000 Glider (the "Mixer Truck"), which was designed, manufactured, and distributed by Terex Advance Mixer, Inc. ("Terex"). (*Id.* ¶¶ 8, 14.) The truck's mixing drum opened at the front of the truck and the cement discharged from a front-facing chute. (*Id.* ¶ 9.) Next to the drum was a mounted hopper which would raise and lower hydraulically and/or pneumatically, but contained no other safety mechanism. (*Id.*) Mixer operators had to clean the hopper, chute, and drum after each delivery. (*Id.* ¶ 10.)

On December 11, 2020, Jason Andresen was an employee of Defendant Ozinga. (*Id.* ¶¶ 14–15.) That day, he was cleaning the hopper, chute, and drum of the Mixing Truck when the hopper unexpectedly fell on him, crushing him between the hopper and the drum, causing his death. (*Id.* ¶ 15.) In the alternative, Plaintiff alleges that Mr. Andresen was caught by the rotating drum and trapped between the hopper and drum, causing his death. (*Id.*)

On September 13, 2021, Kathryn Andresen, as personal representative of Jason Andresen and his surviving spouse, filed her initial complaint. (DE 1.) The complaint named Terex Advance Mixer, Inc., Terex Corporation, and Ozinga as defendants. (*Id.*) Ms. Andresen asserted three claims against Terex Advance Mixer, Inc., and Terex Corporation for strict liability, negligence, and punitive damages. (*Id.* ¶¶ 21–38.) As relevant here, though, the only claim brought against Ozinga was for a declaration of a subrogation interest. (*Id.* ¶¶ 39–41.) In Count IV, because Ozinga had paid or would pay workers' compensation benefits to Ms. Andresen, Ms. Andresen requested that the Court issue "a declaration as to what (if any) right Ozinga has to" any recovered funds "in the event of a recovery [against Terex]." (*Id.* ¶ 40–41.)

Defendant Ozinga then filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (DE 5.) In this motion, Ozinga argued (among other things) that the Court lacked subject matter jurisdiction over the claim seeking declaratory relief because the claim was not ripe. (DE 6.) Ms. Andresen then filed her response to this motion to dismiss (DE 18), and Ozinga filed its reply (DE 19), making the issue fully briefed.

In February, Plaintiff submitted an amended complaint. (DE 36.) This amended complaint added an additional claim against Terex for loss of consortium. (*Id.* ¶¶ 39–41.) Count

2

V of the amended complaint asked for a declaration of a subrogation interest against Ozinga. (*Id.* ¶¶ 44–46.) This count was identical to Count IV in the original complaint.

"When an amended complaint is filed, the prior pleading is withdrawn and the amended pleading is controlling." *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008). "Courts routinely deny motions to dismiss as moot after an amended complaint is filed, unless a defendant wishes to apply that same motion to the amended complaint because the amended complaint has not remedied the previous deficiencies." *Doe v. Purdue Univ.*, No. 2:17-CV-33-JPK, 2020 WL 1660044, at *1 (N.D. Ind. Mar. 31, 2020) (quoting *Trading Techs. Int'l, Inc. v. BGC Partners, Inc.*, No. 10 C 715, 2010 WL 3272842, at *1 (N.D. Ill. Aug. 17, 2010)). Here, Ms. Andresen's amended complaint brings an identical claim to that brought against Ozinga in the original complaint. Therefore, Ozinga's arguments concerning ripeness brought in its motion to dismiss equally apply to the amended complaint. Accordingly, the deficiencies of the first complaint have not been remedied and the Court considers Ozinga's motion to dismiss.

The Court also notes that it has an independent obligation "to determine in every case whether it has subject matter jurisdiction and to dismiss the case if it concludes it does not." *Jaronik v. Town of Lakeville*, No. 3:15-CV-623, 2017 WL 819696, at *1 (N.D. Ind. Mar. 2, 2017) (quoting *Hertel v. Sweet*, 2007 WL 2404804 at *1 (E.D. Wis. Aug. 17, 2007). "[N]ot only may the federal courts police subject matter jurisdiction *sua sponte*, they must." *Hay v. Ind. State Bd. Of Tax Com'rs*, 312 F.3d 876, 879 (7th Cir. 2002) (citing *Ruhrgas v. Marathon Oil Co.*, 526 U.S. 574, 577, 583 (1999)). Given this independent obligation, even if Ozinga had failed to file its motion to dismiss, the Court still would have had authority to examine its subject matter jurisdiction over the claim brought against Ozinga.

**B.    Standard of Review**

Rule 12(b)(1) authorizes dismissal of claims over which the Court lacks subject matter jurisdiction. In analyzing a motion to dismiss, the Court must accept as true all well-pled factual allegations and must draw all reasonable inferences in favor of the plaintiff. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citations omitted). The burden of establishing proper federal subject matter jurisdiction rests on the party asserting it. *Muscarello v. Ogle Cty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

**C.   Discussion**

In her amended complaint, Ms. Andresen requests that the Court issue "a declaration as to what (if any) right Ozinga has to" any recovered funds "in the event of a recovery." (DE 36 ¶¶ 40–41.) As Ms. Andresen recognizes in her amended complaint, Ozinga's potential right to recovery stems from it being an "employer" under the workers' compensation laws in Indiana. Therefore, prior to addressing whether Ms. Andresen's claim is ripe, the Court reviews the workers' compensation laws of Indiana.

*(1) Indiana's Worker's Compensation Act*

The Indiana Worker's Compensation Act requires that "employers . . . provide limited compensation to workers whose injuries arise out of and in the course of their employments." *Sprangler, Jennings & Daugherty P.C. v. Indiana Ins. Co.* (*Sprangler*), 729 N.E.2d 117, 120 (Ind. 2000) (citation and quotation marks omitted). The Act created a novel remedy unknown to the common law and was designed to give compensation to injured employees without regard to fault. *McQuade v. Draw Tite, Inc.*, 659 N.E.2d 1016, 1018 (Ind. 1995) ("[T]he remedies

provided in the Worker's Compensation Act are in derogation of common law . . . ."); *Waldridge v. Futurex Indus., Inc.*, 714 N.E.2d 783, 785 (Ind. Ct. App. 1999) ("The Worker's Compensation Act is designed to grant compensation to injured employees without regard to fault."). One benefit of worker's compensation is that it provides a prompt remedy guaranteeing some recovery to injured employees hurt in industrial accidents. *Sprangler*, 729 N.E.2d at 120 ("While it could take years to reduce a third-party claim to judgment, the Worker's Compensation Act requires that the employer provide medical treatment before the adjudication of permanent impairment.").

Typically, an employee's recovery for job related accidents is limited exclusively to the remedies afforded under certain provisions in the worker's compensation scheme. *Northcutt v. Smith*, 642 N.E.2d 254, 256 (Ind. Ct. App. 1994). However, an employee, or an injured employee's dependents, may wish to bring a third-party suit in order to maximize recovery, as workers' compensation is not meant to award damages for pain, suffering, or other monetary loss, but instead gives benefits "intended to replace the future wages that the employee would earn if he were able to continue work." *Sprangler*, 729 N.E.2d at 121. Therefore, Indiana Code § 22-3-2-13 ("Section 13") provides an exception to the general rule and "permits the injured employee [or the employee's dependents] to bring suit against individuals other than the employer or fellow employees." *Id.* It is this exception which permits Ms. Andresen to file the instant action against Terex.

However, in some circumstances, an employer may pay benefits to an injured employee before that employee files a claim against a third party. *Sprangler*, 729 N.E.2d at 120. Therefore, when an employee who has already received worker's compensation sues a third-party tortfeasor, Section 13 seeks to prevent "double recovery by the employee" by providing the

5

employer a lien on the amount received by the employee in that third-party suit. *Niegos v. ArcelorMittal Burns Harbor LLC*, 940 N.E.2d 323, 327 (Ind. Ct. App. 2010); *see also Walkup v. Wabash Nat. Corp.*, 702 N.E.2d 713, 715 (Ind. 1998) ("[T]he purpose of the worker's compensation lien is to prevent the injured employee from recovering twice at the expense of the wrongdoer."). In order to prevent this double recovery, the statute provides that:

> [I]f the action against the other person is brought by the injured employee or the injured employee's dependents and judgment is obtained and paid, and accepted or settlement is made with the other person . . . then from the amount received by the employee or dependents there shall be paid to the employer or the employer's compensation insurance carrier, subject to its paying its pro-rata share of the reasonable and necessary costs and expenses of asserting the third party claim, the amount of compensation paid to the employee or dependents . . . and the liability of the employer or the employer's compensation insurance carrier to pay further compensation or other expenses shall thereupon terminate.

Ind. Code § 22-3-2-13(a). Indiana Courts have emphasized that, before an employer owes any costs or expenses, there must be either a judgment or settlement against which a lien can be asserted. *Welter v. F.A. Wilhelm Const.*, 743 N.E.2d 1255, 1259 (Ind. Ct. App. 2001) (finding that before an employer owes its pro rata share of expenses, "first, a fund had to be created against which a lien could be asserted" by the employer).

While one purpose of Section 13 is to prevent double recovery by the plaintiff, it also has the goal of ensuring that the wrongdoer bears the ultimate responsibility for the wrong committed. *Sprangler*, 729 N.E 2d at 120 (citing *Arthur Larson & Lex K. Larson*, 6 Larson's Workers' Compensation Law § 71.10 at 14-1 (1999)). When the plaintiff successfully gets a judgment against or settles with a tortfeasor, liability is reapportioned from the employer to the wrongdoer by providing for reimbursement to the employer for compensation paid. In order to apportion liability to the wrongdoer in situations where the employee fails to recover from the tortfeasor, Section 13 protects an employer by affording it subrogation rights. Ind. Code § 22-3-

2-13. These subrogation rights allow an employer to initiate an action against a tortfeasor in two circumstances. First, if the employee brings an action against a third party for damages within two years after the cause of action accrues, but the action is dismissed, then the employer, if it paid compensation to the employee, may bring an action on its own behalf within one year from the date of the dismissal against that third party. Ind. Code § 22-3-2-13(e). Second, if the employee fails to bring an action for damages against the third party within two years after the cause of action accrues, then the employer, if it paid compensation to the employee, may bring an action on its own behalf within one year from the date of expiration of the two-year period after the cause of action accrued. Ind. Code § 22-3-2-13(f). These provisions reapportion liability to the wrongdoer by allowing the employer to step into the shoes of the employee and initiate its own lawsuit against the tortfeasor.

With the above statutory framework in mind, the Court now examines whether Ms. Andresen's claim against Ozinga is ripe. It concludes it is not.

### (2) Ripeness

"Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.'" *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019). Ripeness is "one aspect of the case-or-controversy requirement." *Id.* A claim seeking a declaratory judgment is ripe if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Any adverse legal interests here are not of sufficient immediacy to be ripe. The Seventh Circuit has consistently held that a duty to indemnify is not ripe until the underlying litigation is terminated, reasoning that "[a] declaration that A must indemnify B if X comes to pass has an advisory quality; and if the decision would not strictly be an advisory opinion (anathema under Article III) it could be a mistake, because it would consume judicial time in order to produce a decision that may turn out to be irrelevant." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003); *see, e.g.*, *Nationwide Insurance Co. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) ("[T]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit."); *Grinnell Mutual Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995) ("[T]he duty to indemnify is unripe until the insured has been held liable."); *Travelers Insurance Cos. v. Penda Corp.,* 974 F.2d 823, 833 (7th Cir. 1992) ("[T]he determination of whether [defendant] has a duty to indemnify is not ripe until the underlying litigation is terminated.").

A similar rationale applies in this context: any declaration that Ozinga is entitled to recover a certain amount of the judgment *if* Andresen gets a favorable judgment against the third part has an advisory quality. If Andresen does not get a favorable judgment, then Ozinga has no lien, and any previous declaration would have the potential to be mistaken. Furthermore, depending on the outcome of this suit, Ozinga might gain other rights besides a lien. For example, if a motion to dismiss is granted, then Ozinga may then bring an action on their own behalf within one year from the date of the dismissal against that third party. Ind. Code § 22-3-2-13(e).

In her response brief to Ozinga's motion to dismiss, Ms. Andresen asserts that Ozinga is "obligated to pay a pro rata share of all costs and expenses in pursuing the claim." (DE 7 at 1.)

However, this obligation only arises *after* there is a judgment or settlement against which a lien can be asserted by the employer and the employer elects not to waive its right to reimbursement. *Welter v. F.A. Wilhelm Const.*, 743 N.E.2d 1255, 1259 (Ind. Ct. App. 2001) (finding that before an employer owes its pro rata share of expenses, "first, a fund had to be created against which a lien could be asserted" by the employer). Meaning, Ms. Andresen can only point to a "hypothetical, speculative, or illusory dispute[] as opposed to [an] actual, concrete conflict." *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992). The remedy she seeks (a declaration of Ozinga's right to any of the recovered funds) is entirely predicated on a hypothetical situation where (1) Ms. Andresen's case against Terex is not dismissed, (2) she then successfully recovers against Terex through either a settlement or judgment, and (3) the parties cannot come to an agreement as to what Ind. Code § 22-3-2-13 requires in that circumstance. However, this type of abstract disagreement is precisely the type of premature adjudication that the doctrine of ripeness requires the Court to avoid. *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) ("Ripeness is predicated on the central perception . . . that courts should not render decisions absent a genuine need to resolve a real dispute.").

      Ms. Andresen's amended complaint appears to recognize the speculative nature of the relief she requests, writing: "*[i]n the event of a recovery* against Terex Defendants in this action, Plaintiff requests a declaration as to what (if any) right Ozinga has to such recovered funds." (DE 36 ¶ 46.) The italicized portion indicates that the claim against Ozinga has not arisen from a present dispute, but rather is conditioned on future occurrences. *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" (citations and quotation marks omitted)). Even the term "recovery" is ambiguous at this stage. Ms. Andresen could recover in

multiple ways, which could result in Ozinga having different rights. For example, Ms. Andresen could recover by getting a judgment in an amount greater than the amount of compensation and services and products paid by Ozinga. In which case, Ind. Code § 22-3-2-13(a) specifies that Ozinga has a right to reimbursement for the amount of compensation paid to the employee, or his dependents, and liability of the employer to pay further worker's compensation terminates. However, if the amount of "the judgment is for a lesser sum than the amount for which the employer . . . is liable for compensation and for services and products" then the employee can either collect on the judgment and repay the employer for previous compensation and services and products paid, or the employee may assign the right to the judgment to the employer and still be entitled to worker's compensation by the employer in the future. Ind. Code § 22-3-2-13(c). Therefore, not only is it unclear whether Ms. Andresen will recover at all, it is also unclear *how* she will recover.

Furthermore, courts have indicated that, where a right to reimbursement is predicated on recovery, the claim to enforce that right becomes ripe upon recovery. *See Lee. v. Genie Indus., Inc.*, No. 3:07-CV-47, 2007 WL 3284873, at *3 (M.D. Ga. Nov. 6, 2007) ("Movant's right to enforce its subrogation lien under [Georgia's workers' compensation laws] is not yet ripe because Plaintiff has not yet been fully compensated."); *see also Clifton v. Gainey Transp. Servs., Inc.*, No. CV407-167, 2008 WL 474428, at *3 (S.D. Ga. Feb. 19, 2008) (same); *see also Galouzis v. Americoat Painting Co.*, No. 08-MA-196, 2009 WL 161875, at *3 (Ohio Ct. App. 2009) ("[T]his intentional tort action remains to be litigated [so the question of whether the Ohio Bureau of Workers' Compensation has a right] to subrogation to prevent a double recovery of damages are not ripe for review until a final judgment is issued in this case."). In other contexts, courts have also indicated that a claim seeking a declaratory judgment to determine the amount

10

of a reimbursement an employer is entitled is not ripe until the employee recovers. *See Reinhart Companies Emp. Ben. Plan v. Vial*, No. 2:09-CV-169, 2009 WL 4639509, at *4 (W.D. Mich. Dec. 2, 2009) (finding that because "the reimbursement provisions [of an ERISA qualified employee welfare plan with a right to subrogation/reimbursement] apply to *any recovery* from a third party that was responsible for the injury [and there had been] at least a partial settlement . . . that their claim for equitable relief [was] ripe"); *see also Vandenbrink v. Voneschen*, 542 F. App'x 728, 730 (11th Cir. 2013) ("The district court lacked jurisdiction" on ripeness grounds for an action seeking a declaration that State Farm was not entitled to reimbursement where "State Farm [possessed] a right to reimbursement, but it also acknowledged that it could not recover its medical payments until [Plaintiff] was 'made whole' for her injuries[,]" that Plaintiff had not been made whole, and that State Farm would not seek recovery until she was "made whole"). In the instant case there has been no recovery, either through a judgment or settlement, indicating that dismissal is justified.

Accordingly, because the rights of Ozinga, established by statute, depend on outcomes in the instant lawsuit which have not yet come to pass, the Court finds that the claim against Ozinga is not ripe for adjudication.

### D.     Conclusion

For the foregoing reasons, the Court DENIES as MOOT Ozinga's motion to dismiss. (DE 5.) However, because Count V of the amended complaint against Ozinga is not ripe, the Court DISMISSES it without prejudice. With no claims remaining against Ozinga, it is DISMISSED from this action.

SO ORDERED.

ENTERED: April 20, 2022

                                                    /s/ JON E. DEGUILIO
                                                Chief Judge
                                                United States District Court